IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| **WHITNEY RIVERO** | § | **PLAINTIFF** |
| | § | |
| | § | |
| v. | § | Civil No. 2:21cv131-HSO-RHWR |
| | § | |
| | § | |
| **BRP U.S., INC., and NATCHEZ** | § | |
| **POWERSPORTS, LLC** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION [12] TO REMAND AND REMANDING CASE TO STATE COURT**

BEFORE THE COURT is the Motion [12] to Remand filed by Plaintiff Whitney Rivero.  This Motion is fully briefed.  Having considered the record and relevant legal authority, the Court finds that Plaintiff's Motion [12] to Remand should be granted, and that this case should be remanded to the Circuit Court of Lawrence County, Mississippi.[1]

I. BACKGROUND

According to the Complaint [1-2], "[t]his is an action for Strict Liability and Negligence arising from a defective and unreasonably dangerous product – a 2019 Can-AM Commander XT ATV . . . and component parts . . . ."  Compl. [1-2] at 5-6.

---

[1] Defendant Natchez Powersports, LLC has also filed a Motion [9] to Dismiss.  Because Plaintiff filed a Motion [12] to Remand and the Court finds that it lacks subject-matter jurisdiction, it does not address the Motion [9] to Dismiss.  *See, e.g., Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 675 (5th Cir. 2019) (holding that courts "have a constitutional obligation to satisfy [them]selves that subject matter jurisdiction is proper before [they] engage the merits" of a case).

Plaintiff Whitney Rivero ("Plaintiff" or "Rivero") alleges that he was operating the ATV (sometimes referred to by the parties as the "Subject Commander") when it malfunctioned, turned, and rolled on its side, crushing Plaintiff's left arm under the roll cage. See id. at 6. The Complaint asserts that Defendant BRP U.S., Inc. ("BRP") "designed, engineered, manufactured, imported, distributed, supplied, marketed, tested, inspected, advertised, and/or sold" the ATV, id. at 5, and that Defendant Natchez Powersports, LLC ("Natchez") purportedly "designed, engineered, manufactured, imported, distributed, supplied, marketed, tested, inspected, advertised, rented, leased, and/or sold" the ATV, id.

Plaintiff filed suit in the Circuit Court of Lawrence County, Mississippi, naming BRP and Natchez as Defendants. The Complaint raises claims for "defective products" and negligence against BRP, asserting that when the Commander ATV left BRP's control it was defective in various ways, that BRP knew or should have known of the defects, and that BRP breached duties owed to Plaintiff. See id. at 7-11. The Complaint advances claims against Natchez for "defective products," breach of warranty, and negligence. Id. at 11-17.

BRP removed the case to this Court, ostensibly invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Notice of Removal [1] at 2. According to BRP, Plaintiff and Natchez are both citizens of Mississippi, but Natchez has been improperly joined to defeat subject-matter jurisdiction, such that its citizenship should be disregarded. Id. at 4-7. Plaintiff has filed a Motion [12] to Remand, contending that Natchez is not improperly joined and that complete diversity of

2

citizenship is lacking. *See* Mem. [13] at 8-10. BRP and Natchez oppose Plaintiff's Motion [12], *see* Resp. [19]; Mem. [20]; Resp. [21], and Natchez insists that it is immune from liability and was improperly joined, *see* Resp. [21] at 1.

## II. DISCUSSION

A. Relevant legal authority

1. Subject-matter jurisdiction

28 U.S.C. § 1332(a)(1) provides that

> [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> (1) citizens of different States . . . .

28 U.S.C. § 1332(a)(1). The parties do not dispute that the amount in controversy is satisfied in this case. The pertinent question is whether there exists complete diversity of citizenship, and in particular whether Natchez has been improperly joined, such that its citizenship should be disregarded for purposes of establishing diversity. *See, e.g., Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021).

> The United States Court of Appeals for the Fifth Circuit has explained that
>
> [i]mproper joinder occurs when a plaintiff is unable to establish a cause of action against the non-diverse party in state court. The test is whether there is no possibility of recovery by the plaintiff against an in-state defendant or no reasonable basis for predicting recovery against an in-state defendant. To determine if there was improper joinder, the district court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.

3

*Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1046 (5th Cir. 2021) (quotations and footnotes omitted).

"The burden of persuasion on those who claim improper joinder is a heavy one." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quotation omitted). In making an improper joinder determination, a court must "view all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff and resolve any contested issues of fact and any ambiguities of state law in the plaintiff's favor." *Id.* (quotation omitted).

The Rule 12(b)(6)-type analysis is not the only way to establish improper joinder. *See id.* According to the Fifth Circuit, "in a relatively small number of cases, the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (quotation omitted) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.*

BRP asks the Court to pierce the pleadings to address improper joinder, arguing that, "[w]hen Plaintiff's pleadings are pierced, it is clear there is no reasonable basis for him to recover against Natchez as a matter of law." Notice [1] at 6. BRP has supplied the Affidavit [1-3] of Natchez's CEO, William Moore ("Moore"), *see* Moore Aff. [1-3], and Plaintiff counters with the affidavit of a

4

mechanical engineer, Mark Ezra, P.E. ("Ezra"), *see* Ezra Aff. [13-2]. Because both parties have submitted evidence in support of their arguments, *see id.*; Moore Aff. [1-3], and Defendants maintain that Plaintiff has misstated or omitted discrete facts that bear on the issue of improper joinder, *see* Notice [1], the Court in its discretion will pierce the pleadings and conduct a "summary inquiry" as to whether Natchez was improperly joined, *Ticer*, 20 F.4th at 1046.

2.   Relevant Mississippi law

Defendants argue that Natchez is immune from suit under the "innocent seller" exemption of the Mississippi Products Liability Act ("MPLA"), Mississippi Code § 11-1-63(h). *See, e.g.,* Notice [1] at 7. The MPLA applies to "any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself." Miss. Code Ann. § 11-1-63. Under the MPLA,

> (a)   The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:
>    (i)   1.   The product was defective because it deviated in a material way from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
>        2.   The product was defective because it failed to contain adequate warnings or instructions, or
>        3.   The product was designed in a defective manner, or
>        4.   The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
>    (ii)   The defective condition rendered the product unreasonably

5

      dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a).

The "innocent seller" exemption to the MPLA provides, however, that

> [i]n any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller or designer of a product other than the manufacturer shall not be liable unless the seller or designer exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller or designer altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller or designer had actual or constructive knowledge of the defective condition of the product at the time he supplied the product. It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

Miss. Code Ann. § 11-1-63(h). This "innocent-seller provision is an affirmative defense." *Hinton v. Sportsman's Guide, Inc.*, 285 So. 3d 142, 150 (Miss. 2019); *see also, e.g., Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) (stating that "when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate").

B. <u>Analysis</u>

1. <u>The parties' evidence</u>

  In support of BRP's improper joinder argument, Moore avers that Natchez "did not design, manufacture, engineer, import, distribute, test, package, or label the Subject Commander and, therefore, did not exercise substantial control over any such aspect of the Subject Commander." Moore Aff. [1-3] at 2. According to

Moore, Natchez received the Commander from BRP on April 25, 2019, and "[u]pon receipt, Natchez installed the roll cage, the shocks, seatbelts, and seats, all of which accompanied the vehicle unit and were installed pursuant to instructions from the manufacturer." *Id.*   Moore states that "[n]o representative of Natchez altered or modified the Subject Commander" and that "Natchez's pre-sale work on the Subject Commander was limited to performing a pre-delivery inspection and initial service, test driving the unit, and installing a Can-Am accessory roof that [the customer] purchased, which Natchez installed pursuant to instructions from the manufacturer." *Id.*[2]   Moore avers that "[t]here were no known issues with the Subject Commander at the time of sale"; "[n]o representative of Natchez had any knowledge of any alleged defective condition of the Subject Commander before or at the time of sale"; and "Natchez had no reason to believe the Subject Commander was defective in any manner." *Id.*

In response, Ezra's Affidavit states that he conducted an initial visual inspection of the ATV and its steering assembly and reviewed Moore's Affidavit. *See* Ezra Aff. [13-2] at 2.   Ezra relates that, during his inspection,

> it was readily apparent that the left side lacked the correctly assembled steering tie-rod end and retaining nut and cotter pin. The steering tie-rod end on the right front wheel was, however, correctly assembled and connected to the right-side steering knuckle by a castellated nut and safety cotter pin.

*Id.*   The "castellated nut and the cotter pin (which is a primary security device) was

---

[2] Moore states that Natchez sold the ATV to Westley Rivero, not Plaintiff, *see* Moore Aff. [1-3] at 2, but it has not argued that this affects Plaintiff's ability to bring claims against it.

missing and the tie rod end ball joint was no longer inserted into the left front wheel steering knuckle." *Id.*

Ezra maintains that Natchez has specialized knowledge concerning ATVs and that its admitted pre-delivery inspection, installation, and assembly work would have given it an opportunity to verify assembly of the steering and tie rods. *See id.* at 2-3. According to Ezra,

> [t]his element is a primary safety item on all vehicles, to inspect that all safety cotter locking pins are in place on the chassis elements or frames of vehicles and bent so that they cannot fall out of the castellated nuts that they lock in place. Cotter pins are primary safety devises used in the fasteners of almost all terrestrial [sic] vehicles steering systems as well as elsewhere.

*Id.* at 3. Ezra opines that Natchez knew or should have known that selling an ATV that was missing critical safety component parts would create an unreasonably dangerous condition, and that Natchez failed to warn about these reasonably foreseeable hazards of which it knew or should have known. *See id.*

2. <u>Whether the "innocent seller" exemption applies to Natchez for the purposes of improper joinder</u>

Natchez has presented evidence that it performed certain work on the ATV upon receiving it from BRP, in accordance with BRP's instructions. *See* Moore Aff. [1-3] at 2 ("Upon receipt, Natchez installed the roll cage, the shocks, seatbelts, and seats, all of which accompanied the vehicle unit and were installed pursuant to instructions from the manufacturer."). Also, the customer who acquired the ATV purchased a "Can-Am accessory roof" that "Natchez installed pursuant to instructions from the manufacturer." *Id.* Ezra states that, based upon Moore's

8

Affidavit, "Natchez effectively assembled major portions of the Subject Commander." Ezra Aff. [13-2] at 2.

To the extent Mississippi courts might find that this evidence shows Natchez "altered or modified the product," neither party has cited evidence indicating whether the roll cage, shocks, seatbelts, seats, and Can-Am accessory roof Natchez installed caused the harm for which damages are sought in this case. *See* Miss. Code Ann. § 11-1-63(h) (stating that a seller is not liable unless it "altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought"). On this point, the Court is left with the Complaint [1-2], which charges that Natchez's alteration or modification of the ATV and its component parts "was a substantial factor in causing the harm for which recovery of damages is sought." Compl. [1-2] at 14.

Plaintiff has also presented evidence that Natchez had actual or constructive knowledge of the defective condition of the ATV at the time it supplied the product, which would preclude application of the "innocent seller" exemption. *See* Ezra Aff. [13-2] at 2-3. Specifically, Ezra has opined that Natchez's admitted pre-sale inspection and work on the ATV would have afforded it "the opportunity to verify the assembly of the Subject Commander's steering assembly and tie rods," such that Natchez knew or should have known the ATV "was missing critical safety component parts" that created an unreasonably dangerous condition. *Id*. A seller's actual or constructive knowledge of a defective condition of a product can eliminate a seller's protection under the MPLA. *See* Miss. Code Ann. § 11-1-63(h)

(exonerating from liability a seller unless it had "actual or constructive knowledge of the defective condition of the product at the time he supplied the product").

In conducting this summary inquiry, the Court cannot say that Defendants have shown there are discrete and undisputed facts present in the record that would preclude Plaintiff's recovery against Natchez. *See Ticer*, 20 F.4th at 1046. Focusing on the joinder of Natchez, rather than upon the ultimate merits of Plaintiff's claims themselves, Defendants have not carried their heavy burden of demonstrating that Natchez was improperly joined to defeat subject-matter jurisdiction. *See Davidson,* 819 F.3d at 765; *Smallwood*, 385 F.3d at 573.

When viewed through the demanding improper joinder standard, whether Natchez engaged in any activity concerning the ATV that removed it from the "innocent seller" exemption under the MPLA presents disputed questions of fact, *see* Miss. Code Ann. § 11-1-63(h), and at this stage the Court must resolve any contested issues of fact and ambiguities in state law in Plaintiff's favor, *see Davidson*, 819 F.3d at 765. Therefore, under the improper joinder standard, Defendants have not shown that there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against Natchez. *See Ticer*, 20 F.4th at 1046. Because Defendants have not shown that Natchez was improperly joined, diversity jurisdiction does not exist. Plaintiff's Motion [12] to Remand must be granted, and this case will be remanded to state court.

### III.   CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that the Motion [12] to Remand filed by Plaintiff Whitney Rivero is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED**, that this civil action is remanded to the Circuit Court of Lawrence County, Mississippi, and that a certified copy of this Order of remand shall be immediately mailed by the Clerk to the clerk of the state court pursuant to 28 U.S.C. § 1447(c).

**SO ORDERED AND ADJUDGED**, this the 20th day of July, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE